GEORGE MOORE, Plaintiff, v. THE MAYOR, Etc., OF THE CITY OF NEW YORK, Defendant.

*Chap. 446, Laws of 1857 — effect on contract of failure to publish resolution — Ratification.*

This action was brought to recover the amount due upon a contract, the resolution authorizing the making of which had not been published as required by section 7 of chapter 446, Laws of 1857, before its adoption by the common council of the city of New York. *Held*, that the contract was void, and that the plaintiff was not entitled to recover.

The work provided for by the contract was performed and partially paid for by the city. *Held*, that these acts did not constitute a ratification of the contract by the city; they were the acts of its officers alone, who could bind it only by observing the requirements of the law affecting the proceedings.

Motion by defendant for a new trial, on exceptions ordered to be heard at the General Term in the first instance, after a verdict in favor of the plaintiff directed by the court. The action was brought upon a contract for paving, etc., in the city of New York.

*John E. Parsons*, for the plaintiff. The failure to publish the ordinance in the Leader, one of the designated corporation papers, did not invalidate the contract. The work has been done, and has been used by the city, and there has been the most complete ratification. Ratification may be inferred from acquiescence, after knowledge of all the material facts, or from acts inconsistent with any other supposition. (Dillon on Municipal Corporations, § 385; *Peterson* v. *The Mayor, etc.*, 17 N. Y., 449, 453; *Hodges* v. *Buffalo*, 2 Den., 110; *People* v. *Flagg*, 17 N. Y., 584; *Brady* v. *The Mayor, etc.*, 20 id., 312.) The only limitation upon the power to ratify is, that an act that is in violation of a direct statutory prohibition, of which the parties concerned are required to take notice, cannot be made valid by subsequent ratification. (*Sprague* v. *Birdsall*, 2 Cow., 419; *People* v. *Laimbeer*, 5 Den., 9; *McKeen* v. *Delaney*, 5 Cranch, 32; 1 Serg. & Rawle, 106.) All these matters were, from their nature, within the cognizance of the corporation officers; and not only is it reasonable that the corporation shall be held responsible for their neglect when it seeks to impose lia-

bility upon third persons; but the principle applies, that they who seek to take advantage of a statutory provision must show exact compliance with its requirements. (*Sharp* v. *Speir*, 4 Hill, 76; *In re Douglas*, 46 N. Y., 42; *Stetson* v. *Kempton*, 13 Mass., 272; Smith on Statutes, 789.)

*D. J. Dean*, for the defendant.

DANIELS, J.:

The plaintiff recovered a verdict, by the direction of the court, for the balance unpaid upon a contract made with Robert Jardine, for regulating and paving with stone blocks, Eighth avenue from Forty-second to Fifty-eighth streets. The contract was executed by Darragh and Craven, on the part of the defendant, and it was entered into under the terms of a resolution adopted by the boards of councilmen and aldermen of the city, and approved by the mayor, on the 22d day of May, 1866. This resolution provided for the improvement, at the expense of the city, to be reimbursed by an assessment upon the property benefited by it. The work was afterward performed, and the contract for it ultimately assigned to the plaintiff, who claimed the balance appearing unpaid. Various objections were made during the progress of the trial, to his right to recover, which were overruled by the court, and the defendant duly excepted. Among them was the objection, that the resolution authorizing the improvement was not published in all the newspapers shown to be employed by the corporation, as was required by law; and for that reason it, as well as all the proceedings taken under it, were claimed to be unlawful and void.

The defendant gave evidence directly tending to prove the fact, that in the Leader, which was one of the newspapers then employed by the corporation, pursuant to section 2 of chapter 227 of the Laws of 1863, and of which notice was given in that year to the board of aldermen, the publication was not made. And to the sufficiency of such proof no objection was made. On the other hand, it was assumed, as establishing the fact, on the argument, by both the learned counsel engaged in the case, that this omission to publish the resolution had been satisfactorily shown.

The court overruled the objection taken to the validity of the

contract for the want of this publication, and the counsel for the defendant duly excepted to the decision made. No authority beyond the resolution was either shown or asserted for making the improvement. Upon that all the subsequent proceedings were taken, and its legality would therefore seem to be essential for their validity. It was by means of its provisions alone that the work was authorized, and the city bound for the payment of the expenses. And if that were unlawful, no power appeared to exist for binding the defendant to the performance of a contract deriving its obligations solely from that source. The entire proceeding was wholly statutory; and, by a well settled rule, applicable to all such cases, it was essential that the course prescribed in the statute should be followed, in order to render it valid or effectual. (*Sharp* v. *Speir*, 4 Hill, 76; *Litchfield* v. *Vernon*, 41 N. Y., 123.)

The statute requiring the publication, provided that "all resolutions and reports of committees which shall recommend any specific improvement involving the appropriation of public moneys, or the taxing or assessing the citizens of the city, shall be published immediately after the adjournment of the board, under the authority of the board, in all the newspapers employed by the corporation, and shall not be passed, or adopted, until after such notice has been published at least two days." (Laws of 1857, vol. 1, 875, § 7.)

It so far restrained the powers of the board, that no resolution included within the terms used, could be lawfully adopted until after the publication required should be made. Without that no authority existed for the adoption of the resolution. And if adopted in form, the omission to publish it as the statute directed, necessarily deprived it of all the force and effect which it would otherwise possess. It would be a simple nullity, and all the proceedings based upon it inoperative. And that, in substance, was held to be the effect of such omission in the cases of Douglass (46 N. Y., 42) and Astor (50 id., 363). It is true that the decisions made in these cases did not consider the effect of a failure to publish upon a contract entered into for the improvement intended to be made under such a resolution. But they very plainly held not only the resolution adopted without publication in one of the newspapers to be void, but in addition to that the assessment under

it for the purpose of paying the expenses of the improvement, was declared to be equally as ineffectual. And it would seem to follow logically from those conclusions, that the contract entered into and performed pursuant to, and under the exclusive authority of such a resolution, must be equally without any binding effect upon the parties formally entering into it.

The resolution is the foundation upon which the validity of the contract is necessarily dependent, and when that proves to be unlawful, the proceedings following and contemplated by it, must be affected by the same infirmity. This consequence has repeatedly been held to follow the omission to comply with other statutory provisions prescribing the manner in which contracts shall be made for the performance of public work. (*Brady* v. *Mayor, etc.*, 2 Bosw., 173 ; 20 N. Y., 312 ; *Haughwout* v. *Mayor, etc.*, 2 Abb. Ct. of App. Dec., 345 ; *Donovan* v. *Mayor, etc.*, 33 N. Y., 291.)

In general terms, the principle which has been held applicable to all such cases, is, that " if the charter or act of incorporation prescribe the mode in which the officers or agents of a corporation must act or contract, to render their acts or contracts obligatory on the corporation, that mode must be strictly pursued. The act of incorporation is an enabling act ; it gives the body corporate all the power it possesses ; it enables it to contract, and when it prescribes the mode of contracting, that mode must be observed, or the instrument no more creates a contract than if the body had never been incorporated." (Angell & Ames on Corp. [8th ed.], 283, § 291.) And no good reason appears to exist for excluding this case from its effect.

A contract made by an agent, as the officers of a municipal corporation most surely are, to be binding on the principal, must be entered into under and by virtue of some actual authority. Where that exists, the principal may in some cases be bound, even though it may be transcended by the agent in entering into the obligation. But even in those cases the agent must at least appear to be acting under the apparent authority of the principal. If no authority whatever exists, the latter will not be bound, although the agent may succeed in inducing the belief in the mind of the other contracting party, that he possesses the power to enter into the agreement designed to be made, unless the principal has, by his own

conduct, in some manner rendered himself chargeable with the consequences of the deception.

In this case the defendant did nothing to induce the belief that its officers were empowered to enter into the contract forming the foundation of the claim made by the plaintiff. They acted under specific laws providing the course they should pursue to render their acts binding upon the city. They were special agents, acting within the limits of public and well defined authority, having no power to bind the body represented by them in any other way. And persons dealing with them were bound to take notice of the restraints and disabilities imposed upon them. If they were not, the most stringent acts and provisions could be completely nullified and disregarded by persons designed to be controlled by means of them.

The restraints imposed upon the powers of the officers of the city, have been created for the public safety and protection. And this court has no right to hold their acts to be operative and valid, when they have been performed in such a manner as to violate statutory provisions defining the only course which can lawfully be pursued to give them that character. The officers may bind themselves in favor of persons innocently acting upon the evidence of their supposed authority, but they will fail to render their acts obligatory upon the body proposed to be represented, and in no way participating in the creation or approval of the false appearances exhibited. The resolution was adopted in violation of law, and for that reason it was void, and that fact rendered the contract made for the performance of the work, equally nugatory.

But the learned counsel for the plaintiff contended, that, as the work was actually performed, and partially paid for, the city had so far ratified the contract as ·to become legally liable upon it. This conclusion, however, is unwarranted by the facts it is dependent upon. For, all that has been done by way of the performance of the agreement on the part of the city, has been the acts of its officers alone. They could bind it in but one way, and that was by observing the requirements of the law affecting the proceeding. If they failed, as they certainly did, to do that, no indirect acts or proceedings of theirs, afterward had, could lawfully supply the omission.

If the contract was not legally made under the circumstances,

the defendant's officers could not vitalize it by ratification dependent on the partial performance of its terms. They could not accomplish indirectly what the law prohibited from being done directly. (*Haughwout* v. *Mayor*, 2 Abb. Ct. of App., 345 ; *Marsh* v. *Fulton Co.*, 10 Wall., 677.)

It was also insisted that a recovery could be sustained for the reasonable value of the work performed and materials supplied, even though the contract proved not to be binding upon the defendant. But it is unnecessary to consider that position, because no such cause of action was set forth in the complaint, and no proof given in support of it upon the trial. The recovery was allowed upon the contract alone, and as that was erroneous, the exception presented to the decision allowing it was well taken. For that reason, and without considering the other exceptions taken on behalf of the defendant, the verdict should be set aside, and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Motion for new trial granted, costs to abide event.