CHARLES GUIDET, RESPONDENT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, APPELLANTS.

*City of New York — contract by commissioner of public works — chap. 383 of 1870 — Board of audit — chap. 9 of 1872 — decision of — how reviewed.*

Section 1 of chapter 383 of 1870 provided that there should be raised for repairs to street pavements $250,000, to be expended by the commissioner of public works, but only after specific agreement by him with the parties employed. *Held*, that, although as to the $250,000 therein provided to be expended, the commissioner of public works was relieved from the restrictions of the city charter as to the manner of entering into contracts and the advertising for 'bids, yet that as to contracts entered into after the year 1870 had expired and the $250,000 provided for in the act had been expended, such exemption ceased, and a compliance with the provisions of the charter was essential to their validity.

Plaintiff, claiming to have a demand against the city for $31,432.50 for paving done under a contract made with the commissioner of public works, procured a *mandamus* compelling the board of audit, created by chapter 9 of 1872, to pass upon his claim, which it did, and gave a certificate to him for $13,200, which sum was paid to him by the comptroller, to whom he gave a receipt in full payment of the claim, at the same time protesting against being compelled to give the receipt and accept that sum, and stating that he should at once bring an action to recover the balance.

*Held*, that the plaintiff was bound by the decision of the board of audit, and by accepting the money and giving the receipt thereunder.

If dissatisfied with the award, he should have taken steps to review the action of the board, or to compel a further audit of it; its decision could not, however be attacked collaterally.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

This action was brought to recover the balance alleged to be due plaintiff under a contract made September 29, 1871, between the plaintiff and the commissioner of public works of the city of New York for the doing of certain paving for the sum of $31,432.50, under which contract plaintiff had received $13,200, allowed to him by the board of apportionment and audit; such board having been compelled to act thereon by a writ of *mandamus* sued out by the plaintiff. On receipt of such sum of $13,200, plaintiff gave a receipt in full to the city, at the same time protesting against the reduction of his claim and informing the comptroller that he would bring an action to recover the balance claimed by him to be still due.

The contract was not made in conformity with section 104 of chapter 137 of the Laws of 1870, but the plaintiff claimed, and the referee found, that the commissioner of public works was not bound by the restrictions contained in that section because of the powers conferred on him by section 1, chapter 383 of the Laws of 1870, providing that there should be raised $250,000 for the repairs of streets, to be expended under the direction of the commissioner of public works, but only after specific agreement by him with the parties employed.

*D. J. Dean*, for the appellant.

*O. W. West*, for the respondent.

DAVIS, P. J. :

The answer was altogether too strictly construed against the appellant by the referee. The complaint alleges that, pursuant to a contract made between the plaintiff and defendants, the plaintiff repaired certain pavements, and that for the work done the sum of $31,432.50 became due at the time fixed by the contract, and on which $13,200, had been paid; and demanded judgment for the balance. The answer denied that the defendants promised or agreed to pay any greater sum than the said $13,200, for the repaving, etc., mentioned in the complaint. This answer was inartificial and unlawyerlike, but it should not, we think under section 159 of

the Code, have been construed as admitting the contract set forth in the complaint. On the other hand, it was a denial of *that* contract, and could only properly have been construed as an admission of a contract to pay a sum for the work done, not exceeding $13,200.

This answer was accepted by the plaintiff without any proceeding having been taken to make it more definite and certain; and when the case came down to trial it was the duty of the court to construe its allegations liberally and so that substantial justice should be rendered to both parties. (*Olcott* v. *Carroll*, 39 N. Y., 436.) We think it devolved upon the plaintiff to prove the contract as alleged by him, and that the defendants were at liberty to deny its execution, and to assail its validity to any extent in their power.

It must be conceded that the work was not done under any contract made in conformity to section 104 of chapter 137 of the Laws of 1870; but the plaintiff contended, and the referee held, that the commissioner of public works was not bound by the restrictions contained in that section, because the legislature, by chapter 383 of the Laws of 1870, conferred upon the commissioners of public works direct and exclusive authority to contract for street repairs, without regard to the provisions of the charter. The last-named act is the annual tax levy of the city. It was enacted for the purpose of providing for the current expenses of that year and regulating the expenditure of the sums appropriated for such expenses. By section 1 of the act it was provided that there should be raised for repairs to street pavements $250,000; and it declared that the appropriations for repairs to street pavements "should be expended under the direction of the commissioner of public works, but only after specific agreement by him with the parties employed." That this provision was sufficient to relieve the repairs, etc., mentioned in section 1 of chapter 383 of the Laws of 1870, from the obligations and requirements in respect to contracts contained in the charter, has been held by the Court of Appeals. But it seems to us obvious from the language of the act that this unrestrained authority conferred upon the commissioner of public works only related to the expenditure of the appropriation made in that act, in respect of which the commissioner was clothed with absolute and exclusive authority.

The contract under which the plaintiff claims, seems not to have

been made, while the power given to the commissioner of public works, under the act of 1870 was in force, but after the year 1870 had expired, and after the full expenditure of the appropriation in respect of which such authority was conferred.

The contract was made on or after the 29th of September, 1871; and the source of payment seems to have been the sum provided by the board of apportionment under section 3 of chapter 383 of the Laws of 1870, and no further power seems to have been conferred upon the commissioner of public works in respect to the expenditure of moneys appropriated to repairing streets in the year 1871. If this be so, the work covered by the contract, inasmuch as it required the expenditure of a greater sum than $1,000, must fall within the general system in respect of contracts, created by the charter, and a contract made without observing, but in utter disregard of those restrictions, would not be valid. (*Donovan* v. *The Mayor*, 33 N. Y., 291.)

The defendants alleged by the answer, and it was proven on the trial, that the claim of the plaintiff had been presented to the board of apportionment and audit created by chapter 9 of the Laws of 1872. That was a tribunal having judicial power to pass upon and determine concerning the subject-matters within its jurisdiction. (*People* v. *Board of Apportionment*, 52 N. Y., 224.) It was held in the *Metropolitan Gas-light Co.* v. *The Mayor* (9 Hun, 706), that the decisions of that board were judicial in their nature, and cannot be disregarded in a collateral proceeding, and that when a claim had been voluntarily presented to that board for its consideration and determination, its decision, when finally made, would continue binding upon the parties, so long as it remained unreversed, citing *People* v. *Collins* (19 Wend, 56); *Supervisors* v. *Briggs* (2 Hill, 135; 2 Denio, 26); *Swifts* v. *Poughkeepsie* (37 N. Y., 511). It can hardly be claimed on the part of the plaintiff that his claim was not voluntarily submitted to that board, so far at least as he was concerned, for it was done by virtue of a *mandamus* sued out of this court by himself, to compel the board to take cognizance of, and to proceed to audit his claim under the contract set forth in his complaint. The board did so and the result was an adjudication in favor of the plaintiff for the sum of $13,200, which sum was afterwards paid to him by the comptroller

upon his executing and delivering to that officer a receipt in the following words:

"NEW YORK CITY, *April* 4, 1873.

"Received from Andrew H. Green, warrant No. 2449, the sum of $13,200 in full payment of the claim referred to in the written certificate of the board of apportionment and audit.

"$13,200.                           CHARLES GUIDET."

Simultaneously with the delivery of this receipt by him, the plaintiff delivered to the comptroller a letter, or notice in writing protesting against the action of the board in reducing his claim to the sum paid, on the ground that it was illegal and unjust, and in substance declaring that he received the money only on condition that it should apply on account of his claim, and informing the comptroller that he should immediately commence an action against the city for the balance of the claim. This proceeding on the part of the plaintiff does not appear to us to have been of any legal effect. His remedy, if dissatisfied with the audit and award and the sum paid, should have been pursued by reviewing the action of the board or by taking steps to compel a further audit at the contract price, if he were entitled to the same. (*People* v. *Supervisors of Cortland,* 58 Barb., 139; *Supervisors of Onondaga* v. *Briggs,* 2 Denio, 26; S. C., 2 Hill, 135; *Nicholl* v. *Mason,* 21 Wend., 339; *Thomas* v. *Rumsey,* 6 Johns., 26; *Metropolitan Gas-light Co.* v. *Mayor, supra.*)

We think the report of the learned referee and the judgment entered thereon were erroneous, and must be reversed and a new trial ordered, with costs to abide the event.

DANIELS, J., concurred.

BRADY, J., agreed that there should be a new trial.

Judgment reversed, new trial ordered, costs to abide event.